USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/25/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNETTE O. KAMAL and HANY M.
KAMAL, *individually, and on behalf of all
others similarly situated*,

                    Plaintiffs,

          -against-

PRESSLER, FELT & WARSHAW, LLP and
LVNV FUNDING LLC,

                    Defendants.

---

1:23-cv-10487-MKV

**OPINION & ORDER GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Annette O. Kamal and Hany M. Kamal filed a complaint against Defendants Pressler, Felt & Warshaw, LLP ("Pressler"), and LVNV Funding LLC ("LVNV") asserting claims on behalf of Plaintiffs and others similarly situated under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and the New York Consumer Fraud Act, NYGBL §§ 349, *et seq.* ("GBL"), arising from the allegedly defective service and subsequent fraudulent default judgment rendered against them in an action in New Jersey state court captioned, *LVNV Funding LLC, Successor in Interest [Citibank, N.A. (AT&T), Original Creditor] v. Annette O. Kamal*, No. MON-DC-009195-22 (the "Collection Action"). This case is in essence a collateral attack on the state court proceeding.

Defendants move to dismiss the operative amended complaint for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction pursuant to Rule 12(b)(2), for failure to state a claim and under the doctrines of res judicata and collateral estoppel pursuant to Rule 12(b)(6), and because the claims are barred by the abstention doctrines

1

of Rooker-Feldman and Colorado River. For the reasons below, the motion to dismiss is GRANTED.

### FACTUAL BACKGROUND[1]

Defendant Pressler, Felt & Warshaw, LLP ("Pressler") is a law firm that has filed thousands of consumer credit actions, or debt collection actions, throughout New York, New Jersey, and Pennsylvania on behalf of buyers of debt. FAC ¶¶ 2, 52. Pressler represents LVNV, an investor in domestic and international debt, in most of the debt collection lawsuits it brings. FAC ¶¶ 2–3. The vast majority of these lawsuits result in default judgments in favor of LVNV. FAC ¶ 3.[2]

Nearly a decade ago, the Consumer Financial Protection Bureau instituted a $1 million penalty against Pressler's predecessor, Pressler & Pressler LLP, and its two principal partners Sheldon Pressler and Gerard Felt. for their role in filing deceptive debt collection lawsuits on behalf of a debt buyer, New Century Financial Service, Inc. FAC ¶ 4. Pressler & Pressler later reorganized as Pressler, Felt & Warshaw LLP, one of the defendants here. FAC ¶ 4. According to Plaintiffs, Defendants practice "sewer service" by filing lawsuits to collect purchased debt, and failing properly to serve the summons and complaint, and then filing fraudulent affidavits of service to achieve default judgments. FAC ¶¶ 6–7. After Defendants obtain default judgments, they seek to enforce them by restraining bank accounts, garnishing wages, or threatening to seize personal property. FAC ¶ 8.

---

[1] The facts as stated herein are drawn from Plaintiff's First Amended Complaint [ECF No. 21] ("FAC"), and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Some of the facts asserted in this section are contrary to findings in a prior opinion in the Collection Action. The Court addresses this issue later in the opinion.

[2] Pressler is a New Jersey Limited Liability Partnership with a principal place of business in Morris County, New Jersey and LVNV Funding, LLC is a Delaware Limited Liability Company with a principal place of business in New Castle County, Delaware. FAC ¶¶ 17–18

In February 2023, LVNV brought a lawsuit through its attorneys at Pressler against Plaintiff Annette Kamal in Superior Court of New Jersey (the "Collection Action"). FAC ¶ 55. Pressler affirmed that it had sent a copy of the summons and complaint to Annette Kamal via U.S. mail to an address in New Jersey (the "New Jersey address") and affirmed that service was proper. FAC ¶ 57.

Hany and Annette Kamal are a married couple who have lived in New York County since 1968. FAC ¶¶ 14, 54, 56. Annette is 91 and Hany is 83. FAC ¶ 54. Hany and Annette Kamal allege that they have never been residents of New Jersey and were never served with a summons and complaint in the Collection Action. FAC ¶ 56. They allege that Pressler had "no reasonable basis for claiming valid service would be, could be, or was actually achieved by mailing documents to the New Jersey address." FAC ¶ 57.

When Annette Kamal did not appear in the Collection Action, Defendants obtained a default judgment against her. FAC ¶ 58; [ECF No. 26 ("DiCicco Decl.") Ex. G ("Default Judgment")]. Plaintiffs allege the motion for a default judgment and the resulting default judgment also were not properly served. FAC ¶ 58. Defendants sought to enforce the judgment by attaching Annette's personal account at her NYC Chase Bank account. FAC ¶ 58. This is how Annette and Hany Kamal became aware of the judgment in the Collection Action. FAC ¶ 58.

Several months after the Collection Action was commenced, Plaintiff filed this action bringing claims against Pressler and LVNV. [ECF No. 1 ("Compl.")]. Plaintiffs allege that about a month later Pressler learned Annette Kamal did not and never had resided in New Jersey, rendering false its affidavits of service. FAC ¶ 59. On December 11, 2023, Pressler advised the New Jersey Court that Plaintiff's "address provided on the writ for the defendant *is no longer* valid as the defendant has relocated," and called Kamal's New York City address her "new home

address," suggesting that the New Jersey address was valid at the time of service.  FAC ¶ 59

(emphasis added); [ECF No. 32 ("Kamal Decl.") Ex. B ("Address Change Notice")].[3]  Rather than

notifying the New Jersey Court that Annette Kamal had never lived at the New Jersey address and

seeking to have the judgment set aside, Pressler and LVNV asked the Court for leave to serve the

default judgment on Annette Kamal at her New York residence.  FAC ¶ 59; Address Change

Notice.

In March 2024, while briefing on Defendants' motion to dismiss was ongoing in this action,

the New Jersey Court granted Annette Kamal's motion to vacate the Default Judgment in the

Collection Action. Kamal Decl. Ex. C ("Vacating Order"). The New Jersey Court held that "the

Court is convinced that Defendant was not properly served with notice of the legal proceeding."

*Id.* at 6. However, soon after, the New Jersey Court held that Annette Kamal's attorney—one of

the attorneys who represents Plaintiffs here—had committed unauthorized practice of law by filing

the motion to vacate and thus granted a motion filed by LVNV to reconsider the Vacating Order.

[ECF No. 33 ("DiCicco Aff.") Ex. 2 ("LVNV Mot. for Reconsideration")]; [ECF No. 35

("Defendants' Supp. Letter"), Ex. A].  The New Jersey Court allowed Annette sixty days to file a

proper motion to vacate. Defendants' Supp. Letter Ex. A.

In July 2024, the New Jersey Court denied Annette Kamal's second motion to vacate. [ECF

No. 35, Ex. A ("July Order")]. In doing so, the Court applied New Jersey Rule of Court 4:50-1

which sets out several permitted reasons for relieving a party from a final judgment including that

"the judgment or order is void[.]"  The Court ruled that the Default Judgment was not void based

on ineffective service.  *Id.* at 5–6.  In fact, the Court affirmatively found that "[s]ervice was

---

[3] The Court takes judicial notice of the filings in the Collection Action where appropriate as they are either "public records," "incorporated by reference" in the Amended Complaint, or "integral" to the Amended Complaint since it "relies heavily upon [their] terms and effect."  *See Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 180 (2d Cir. 2011); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

effective." *Id.* at 5–10.  The Court held that Kamal came forward with "no admissible proof supporting [her] counsel's contention that she never lived in New Jersey," specifically noting that Annette Kamal provided no certification from her, a family member, friend or neighbor, no documentary proof of her residence at the time the litigation was commenced, no leases, no mail, no driver's license, no utility bills, no voter registration, and no bank statement that showed she lived in New York. *Id.* at 7–8.  Instead, the Court found that the record indicated that "Kamal resided in New Jersey at the address in question" and service on her there was proper. *Id.* at 6, 8 (citing billing statements, two credit bureau reports, the fact that initial service was not returned, and that service of the Default Judgment was signed for at the New Jersey address). The Court later denied Annette Kamal's motion to reconsider the order denying the motion to vacate. [ECF No. 37 Ex A. ("Kamal Reconsideration Order")].

## PROCEDURAL HISTORY

Plaintiff initiated this putative class action by filing a Complaint.  [ECF No. 1 ("Compl.")]. With leave of Court, Plaintiff filed an Amended Complaint, in response to the issues raised in Defendants' first pre-motion letter seeking leave to move to dismiss the case. [ECF Nos. 15, 17, 21].  Thereafter, Defendants moved to dismiss the Amended Complaint, filing a memorandum of law, [ECF Nos. 25, 27 ("Def. Mem.")], and a declaration in support which attached several exhibits.  *See* DiCicco Decl.  In opposition, Plaintiff filed a memorandum of law, [ECF No. 31 ("Pl. Opp.")], and a declaration which also attached several exhibits.  *See* Kamal Decl.  Defendants filed a reply, [ECF No. 34 ("Def. Reply")], and an affidavit in further support which attached two additional exhibits, *see* DiCicco Aff.  The parties thereafter filed three letters advising the Court on the status on the Collection Action. [ECF Nos. 35–37].

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(1) – Lack of Standing

Dismissal of an action under Rule 12(b)(1) is warranted whenever a district court "'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d. Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  A plaintiff bears the burden of establishing its standing by a preponderance of the evidence.  *See Makarova*, 201 F.3d at 113.  "In assessing the plaintiff's assertion of standing, '[courts] accept as true all material allegations of the complaint[ ] and . . . construe the complaint in favor of the complaining party.'"  *Cortlandt St. Recovery*, 790 F.3d at 417 (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)).  Courts may also consider evidence outside of the pleadings in assessing a Rule 12(b)(1) standing motion. *Cortlandt St. Recovery*, 790 F.3d at 417; *Makarova*, 201 F.3d at 113.

### II.    Federal Rule of Civil Procedure 12(b)(2) – Lack of Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant.  *See Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  To make a *prima facie* showing of personal jurisdiction, a plaintiff "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013); *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)

In assessing personal jurisdiction, the Court must "construe the pleadings and any supporting materials in the light most favorable" to the plaintiff. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). Still, the Court cannot "draw argumentative inferences in the plaintiff's favor" and need not accept conclusory legal statements. *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 673 (2d Cir. 2013).

It is well settled that, in deciding a motion to dismiss a complaint for want of personal jurisdiction, the Court may consider materials outside the pleadings. *Fleming v. ISCO Indus., Inc.*, 750 F. App'x 62, 63–64 (2d Cir. 2019) (citing *Dorchester Fin. Sec.*, 722 F.3d at 86 ("[W]e have made clear that a district court may [consider materials outside the pleadings] without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment.")). Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a *prima facie* showing by his pleadings and affidavits that jurisdiction is proper. *Id.* at 85; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *In re Terrorist Attacks*, 714 F.3d at 673. The court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022).

There are three traditional bases for the exercise of personal jurisdiction over a defendant. First, a court may exercise general jurisdiction over a defendant that is "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Second, a court may exercise

"specific or conduct-linked jurisdiction" where there is a sufficient link between the defendant's conduct in the forum and the conduct at issue in the case. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Third, a defendant can consent to the exercise of personal jurisdiction. *Rabinowitz v. Kelman*, 75 F.4th 73, 83 (2d Cir. 2023); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). In all cases, the exercise of personal jurisdiction must comport with fundamental notions of due process. *See Daimler*, 571 U.S. at 117.

### III.    Federal Rule of Civil Procedure 12(B)(6) – Failure to State a Claim

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions." *Id.*

The "plausibility standard" articulated in *Iqbal* "is not akin to a 'probability requirement,'" but it does ask "for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* At bottom, Plaintiff must "nudg[e] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569. Otherwise, the complaint must be dismissed. *Id.*

**<u>DISCUSSION</u>**

**I.     Plaintiff Hany Kamal's Claims Must be Dismissed
         Because He Fails to Allege Standing**

Defendants assert that Hany Kamal and Annette Kamal lack standing to pursue their claims. Def. Mem. at 8–9. Defendants assert that Hany Kamal was not a named defendant in the Collection Action and thus he was not damaged in any way by the enforcement of the Collection Action. Def. Mem. at 8. Defendants assert that Annette Kamal lacks standing because, in the Collection Action, one of her attorneys purported to have power of attorney over her and that attorney asserted that she is "an incompetent" as a 91-year-old "in the final stages of . . . Progressive Supranuclear Palsy." Def. Mem. at 8–9 (citing DiCicco Decl. Ex. L); Def. Reply at 4 n.5. Thus, Defendants urge that Annette Kamal "cannot proceed without a guardian ad litem." Def. Mem. at 8–9.

To have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338 (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). At the pleading stage, "the plaintiff must 'clearly. . . allege facts demonstrating' each element" of standing. *Id.* (citation omitted).

Plaintiff Annette Kamal clearly has standing to pursue her claims. The Amended Complaint alleges the Defendants injured Annette Kamal by fraudulently obtaining and enforcing a judgment procured in the Collection Action against her, attaching her personal bank account in New York. FAC ¶¶ 55, 58, 59. The Amended Complaint makes no allegation that Annette is incompetent and the Court may not take judicial notice of documents filed in the Collection Action for the truth of the statement that Annette Kamal is "an incompetent." *See, e.g.*, *Arkansas Pub. Emps.*, 28 F.4th at 352. Regardless, if Defendants believe that Annette Kamal is incompetent to

defend her rights in court, the proper course of action would be to file a motion to appoint a guardian *ad litem* pursuant to Rule 17(c) of the Federal Rules of Civil Procedure, so that she may be properly represented. *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 200 (2d Cir. 2003) (quoting Fed. R. Civ. P. 17(c)). No such motion has been filed, and this Court cannot make a finding with the requisite sufficient evidence to establish the mental incompetency of Plaintiff and appoint a guardian *ad litem*. *Lucido v. U.S. Legal Support, Inc.*, No. 23-CV-1389 (DEH), 2024 WL 687288, at *1 (S.D.N.Y. Feb. 20, 2024) (citing *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 652 (2d Cir. 1999) (affirming the appointment of a guardian *ad litem* for plaintiff where defendant made the motion to appoint such a guardian)). Defendants cite no law to support their outrageous assertion that a Court must dismiss a plaintiff's case, rather than appoint her a guardian *ad litem*, if the plaintiff is truly incompetent to represent herself. *See* Def. Mem. 8–9.

Defendants are correct, however, that Hany Kamal does not have standing to pursue claims in this case. The Amended Complaint includes no allegation that Hany himself was a defendant in the Collection Action or suffered an injury as a result of the Collection Action. *See* FAC. Moreover, the caption of the Collection Action indicates that Annette Kamal was the only defendant. *See* DiCicco Decl. Ex. M. The only factual allegations in the Amended Complaint regarding Hany Kamal involve his marriage to Annette Kamal, his age, languages, employment status, residence, and income. FAC ¶¶ 14, 54, 56. Plaintiffs argue that Hany Kamal has standing because New York divorce laws divide marital property and debt equally and that New York banking laws indicate that when spouses own a joint account, courts presume that the parties are entitled to equal shares of the account. Pl. Opp. at 10–11. However, the Amended Complaint includes no allegation that Hany and Annette Kamal are divorced and no allegation that Hany Kamal was a joint owner of Annette Kamal's bank account that was attached pursuant to the

judgment in the Collection Action.  *See* FAC.  Hany Kamal does not have standing based solely on an injury to his wife. *See, e.g.*, *Meimaris v. Royce*, No. 19-3339-CV, 2021 WL 5170725, at *2 (2d Cir. Nov. 8, 2021) ("a spouse does not have standing merely on the basis of her marital status to sue for an injury suffered by her spouse").  Accordingly, Hany Kamal lacks standing, and his claims are dismissed.[4]

## II.    Personal Jurisdiction Over Defendants

In response to Defendants' motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, Kamal asserts that Defendants are subject to both general and specific jurisdiction in New York.  *See* Pl. Opp. at 8–10.  Kamal fails to make a *prima facie* case for general jurisdiction over defendants but does make a *prima facie* showing that Defendants are subject to specific jurisdiction in New York with respect to her claims.

## A.    Plaintiff Fails to Establish General Jurisdiction

General personal jurisdiction subjects a defendant to suit on all claims.  *See Daimler*, 571 U.S. at 127.  Under the Due Process Clause, a corporation can "be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic' ... that it is 'essentially at home' in that state." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 571 U.S. at 139).  Under this test, a corporate defendant is "essentially at home" only where it is incorporated or where it maintains its principal place of business "[e]xcept in a truly 'exceptional' case."  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38-39 (2d Cir. 2014)); *Gucci America, Inc.*, 768 F.3d at 135 (quoting *Daimler*, 571 U.S. at 139 & n.19).

---

[4] As such, where the Court names "Kamal" below, the Court refers to only Annette Kamal.

Pressler is a New Jersey Limited Liability Partnership with a principal place of business in Morris County, New Jersey and LVNV Funding, LLC, is a Delaware Limited Liability Company with a principal place of business in New Castle County, Delaware.[5]  FAC ¶¶ 17–18.  Since neither Defendant is "at home" in New York, general jurisdiction in New York over either is improper absent truly exceptional circumstances.  *Brown*, 814 F.3d at 627.

Kamal alleges that Pressler markets itself on its website as doing business in New York, has filed thousands of cases in New York, maintains a law office in New York, where one lawyer works,[6] and works with LVNV which also has an office in New York at the same address.  Pl. Opp. at 9 (citing Kamal Decl. Exs. A, D).  Kamal alleges that LVNV purchases debts of New York residents, regularly sues those residents in New York court, is licensed to do business in New York and "at least one of those licenses lists" a New York City address, the same address as the Pressler's New York office.  Pl. Opp. at 9–10 (Kamal Decl. ¶¶ 7, 8, 10, Ex. F).

These contacts do not establish that either Defendant is "essentially at home" in New York. The fact that Defendants operate some business in New York is insufficient on its own to establish general jurisdiction.  *See, e.g.*, *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d at 226 (explaining that even a "substantial, continuous, and systematic course of business," including negotiations, transactions, and an office in New York, was insufficient to warrant exercise of general jurisdiction (internal quotation marks omitted)).  Further, a foreign defendant does not consent to general personal jurisdiction in New York by registering to do business in the state.  *See*

---

[5] Defendants assert that LVNV is also domiciled South Carolina. Def. Reply at 6.  For the purposes of this analysis whether LVNV is domiciled in South Carolina is irrelevant.

[6] Pressler disputes that a lawyer works at its New York office. Def. Mem. at 6. However, as previously explained, on a motion to dismiss for lack of personal jurisdiction, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *In re Terrorist Attacks,* 714 F.3d at 673.

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020); *D'Amico Dry D.A.C.* v. *Primera Mar. (Hellas) Ltd.*, 348 F.Supp.3d 365, 387 (S.D.N.Y. 2018) (quoting *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015)).[7]

Instead, Defendants' business in New York must be viewed relative to their overall activity "nationwide and worldwide." *See Daimler*, 571 U.S. at 139 n.20; *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 333 (2d Cir. 2016); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (finding no general jurisdiction in Connecticut where "[Defendant's] business in Connecticut, while not insubstantial, constitutes only a very small part of its portfolio."); *Gucci America*, 768 F.3d at135 (finding no general jurisdiction over the Bank of China, which had branch offices in New York but was "incorporated and headquartered elsewhere" and conducted only a small portion of its worldwide business within the forum); *Corley v. Vance*, 365 F. Supp. 3d 407, 434 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (finding no general jurisdiction where defendant had an office in New York but less than 7% of their global workforce is located that office).

Kamal has alleged no facts about the magnitude and nature of the nationwide or worldwide activity of Pressler and LVNV, except the general assertion that PWF has filed "thousands of 'consumer credit actions,' or debt collection actions, throughout NY-NJ-PA" and Pressler represents LVNV in most of the debt collection lawsuits they bring. FAC ¶¶ 2–3. Accordingly, the Court has insufficient context with which to determine whether either defendant is "essentially

---

[7] Though the registration to do business in New York does not constitute consent to general jurisdiction in the state, it may be that attorneys who are licensed to practice in New York or admitted *pro hac vice* in New York have consented to jurisdiction in New York. However, Plaintiff does not allege sufficient facts for the Court to make such a finding with respect to Pressler. Kamal attaches to her attorney's declaration, just one New York state court filing which includes the signature of an attorney associated with Pressler and lists a New York address in his signature block. Pl. Opp. at 9 (citing Kamal Decl. Ex. D). Kamal includes no facts about this person's admission to practice in New York. In any event, the Court need not resolve that inquiry since, as discussed below, defendants are subject to specific jurisdiction with respect to the claims in this case.

at home" in New York.  *See Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *11 (S.D.N.Y. June 22, 2020) ("[Plaintiff's allegations] do not provide any detail about WSFS' national business. Without that context, I cannot properly assess the significance of WSFS' New York contacts with respect to its "overall activity.").  Plaintiff has failed to meet her burden to demonstrate that this is an "exceptional case" in which a corporation is "essentially at home" in a foreign forum.  *See Brown*, 814 F.3d at 627 (quotation marks omitted).

**B.**      **Plaintiff Establishes Specific Jurisdiction over Defendants**

District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis to determine whether there is specific jurisdiction over the defendant.  First, the Court must determine whether the law of the forum state, here, New York's long-arm statute, would subject the Defendant to personal jurisdiction.  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013); *Chloé v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010) ("To determine personal jurisdiction over a non-domiciliary in a case involving a federal question," the Court first "appl[ies] the forum state''s long-arm statute.").  If New York law would permit the exercise of jurisdiction over the Defendant, the Court must also evaluate whether the exercise of jurisdiction would comport with due process.  *See Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

Though Kamal asserts that this Court has specific jurisdiction over Defendants, she fails to identify the pertinent section of the New York long-arm statute. Since Plaintiff alleges that "Defendants conducted business within the State of New York," *see* FAC ¶ 13, and "avail themselves of the laws and benefits of operating their businesses in the state of New York," *see* Pl. Opp. at 8, the Court analyzes specific jurisdiction under CPLR § 302(a)(1).  This subsection permits a court to "exercise personal jurisdiction over any non-domiciliary . . . who in person or

through an agent: . . . transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" CPLR § 302(a)(1).

To determine the existence of jurisdiction under section 302(a)(1) a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction. *American Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024), *cert. denied*, No. 24-653, 2025 WL 247472 (Jan. 21, 2025); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *see Deutsche Bank Securities, Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (N.Y. 2006). Ordinarily, in evaluating whether the defendant transacts business, "[c]ourts look to 'the totality of the defendant's activities within the forum" to decide whether the defendant engaged in "purposeful activity" in New York. *Best Van Lines*, 490 F.3d at 246 (quoting *Sterling National Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975)). The second element of § 302(a)(1) is satisfied "when there exists an articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 643 (2d Cir. 2023).

The decision of the Second Circuit in *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015), is instructive here. In that case, defendant, a law firm attempted to collect a New York resident's debt on behalf of a Pennsylvania-based client by filing a suit in Pennsylvania state court. *Id.* at 166–67. When the New York state resident filed suit in New York alleging violations of FDCPA, the Second Circuit reversed the District Court's dismissal for lack of personal jurisdiction under § 302(a)(1). The Second Circuit held that collecting debt constituted "a major aspect of [Defendant's] mission—part of its principal reason for being." *Id*. at 168. (citing *Deutsche Bank Sec.,* 7 N.Y.3d at 72). Further, it found the defendant's conduct in New York—

mailing one debt collection notice to Plaintiff, engaging in one debt collection phone call with Plaintiff, and mailing a summons and complaint to Plaintiff—was sufficient to establish personal jurisdiction under § 302(a)(1) because the Defendant "initiated debt collection efforts in an active (rather than responsive) attempt to collect money from two New York residents." *Id.* (citing *Paterno v. Laser Spine Inst.,* 24 N.Y.3d 370, 377–78, 998 N.Y.S.2d 720 (2014)). Finally, the Second Circuit found that Plaintiffs' FDCPA claims arose directly from those communications into New York. *Id.* (citing *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2d Cir.1992) ("[R]eceipt of a collection notice is a substantial part of the events giving rise to a claim under the [FDCPA].")).

The facts alleged here are very similar. Kamal brings a FDCPA claim—and two other claims based on the same conduct—against a law firm and its debt investor client that Plaintiff alleges participate in a "fraudulent enterprise" with a shared goal "to obtain default judgments through fraudulent means" by filing thousands of "consumer credit actions" throughout New York, New Jersey, and Pennsylvania. FAC ¶¶ 2, 3, 84. Kamal alleges that, in the Collection Action, Defendant requested service of the Default Judgment to an address in New York and attempted to enforce the Default Judgment through an attachment of Kamal's New York-based bank account. FAC ¶¶ 58–59. Though Defendants initially attempted service in New Jersey and they did not call or write letters to New York residents as the Defendant did in *Eades*, Defendants' conduct here was in deliberate furtherance of debt collection efforts purposefully availing itself of the privilege of transacting business in New York. *See Eades*, 799 F.3d at 168. Further, just as in *Eades,* Plaintiffs' claims of fraudulent debt collection, violations of RICO, and violations of the New York Consumer Fraud Act all arise out of Defendants' pursuit of debt collection from Plaintiff.

Accordingly, Kamal has averred facts that, if credited, establish personal jurisdiction over Defendants pursuant to 302(a)(1).

The exercise of personal jurisdiction also comports with the Constitution's due process protections. "[D]espite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare." *Eades*, 799 F.3d at 168 (quoting *Licci,* 732 F.3d at 170).  The Due Process Clause of the Constitution requires that (1) the defendant have sufficient "minimum contacts" with the forum and that (2) the exercise of jurisdiction over defendants does "not offend traditional notions of fair play and substantial justice." *Spetner*, 70 F.4th at 644–45.

As for the first requirement, courts assess the "quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." *Eades*, 799 F.3d at 168 (citing *Licci,* 732 F.3d at 170 (quotation marks omitted)).  Defendants have sufficient "minimum contacts" with the forum if they "purposefully availed [themselves] of the privilege of doing business in the forum and could foresee being haled into court there." *Id.* (quoting *Licci,* 732 F.3d at 170) (quotation marks and alterations omitted).  Just as with the Defendant in *Eades*, the contacts with New York by Defendants here sufficiently satisfy the "minimum contacts" test.  *See Eades*, 799 F.3d at 168.  Defendants purposefully pursued debt collection from a person allegedly residing in New York by serving her in New York with a Default Judgment and attaching her New York-based bank account.  FAC ¶¶ 58–59.

As for the second consideration, the inquiry into whether exercising jurisdiction comports with fair play and substantial justice reexamines five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the

case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *American Girl*, 118 F.4th at 279 (citing *In re Platinum*, 61 F.4th at 273 (citation omitted)). Here, Defendants are located in New Jersey and Delaware, have offices in New York, routinely litigate in New York to pursue debts, and can easily defend themselves in New York. Moreover, New York has a "manifest interest in providing effective means of redress for its residents," and Kamal has an interest in adjudicating her case in the state where she claims she resides and where her assets are being impacted by Defendants' actions. *Chloé,* 616 F.3d at 173 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985)). The fourth factor is neutral in this case: the controversy could be resolved efficiently in either New York or New Jersey. Finally, the States share an interest in enabling plaintiffs to litigate FDCPA claims in their states of residence. *See, e.g., Sluys v. Hand,* 831 F.Supp. 321, 324 (S.D.N.Y.1993) (noting that FDCPA plaintiffs should be able to file suit in their states of residence because "[o]therwise, [debt collectors] could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned"); *see also Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 348 (S.D.N.Y. 2015) (finding the fifth factor in a RICO case to be "neutral"); *Brady v. Anker Innovations Ltd.*, No. 18-CV-11396 (NSR), 2020 WL 158760, at *7 (S.D.N.Y. Jan. 13, 2020) (finding the fifth factor "neutral" in a case bringing a GBL claim). For these reasons, the Court has personal jurisdiction over Defendants pursuant to the New York long-arm statute

and consistent with due process, and their motion to dismiss on the basis of lack of personal jurisdiction is denied.

## III.    Kamal is Collaterally Estopped from Asserting her Claims

Defendants argue that all of Kamal's claims are precluded under the doctrine of collateral estoppel based on rulings in the Collection Action.  Def. Mem. at 9–11.  Defendants argue that the Court in the Collection Action determined the issue of whether service was proper and that finding is preclusive of each of Kamal's claims.  Def. Mem. at 10–11.  Defendants assert that the initial Default Judgment and a subsequent Writ of Execution Against Goods & Chattels each affirm that service was proper and constitute a final judgment on the merits.  *Id.*

In opposing Defendants' motion to dismiss this case, Kamal relies only on the then-current fact that the New Jersey Court had vacated the Default Judgment against her.  Pl. Opp. at 11–12 (citing Vacating Order).  However, since then, the New Jersey Court ruled Kamal's motion to vacate was improperly filed, permitted Kamal time to file a new motion to vacate, and permitted both parties time to submit additional briefing and evidence related to the vacatur motion.  [ECF No. 35, Ex. A ("July Order")].  After reviewing the materials submitted by the parties, the New Jersey Court denied Kamal's request to vacate the Default Judgment and later denied Kamal's motion for reconsideration.  *Id.*; Kamal Reconsideration Order.  No further motions were filed and no further orders were issued in the New Jersey case.  *See* Collection Action.  Though the parties in this case notified this Court of these developments in the Collection Action, the parties did not move to file additional briefing in this case based on the subsequent New Jersey Court orders. [ECF Nos. 35–37].  Nevertheless, this Court can take judicial notice of orders in the Collection Action as public records, and analyzes collateral estoppel based on the *current* status of the Collection Action. *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (finding that

a district court "properly took judicial notice of documents" in a state court action to analyze the preclusive effect of that court's holdings).

The doctrine of collateral estoppel, or issue preclusion, precludes a party from relitigating a factual or legal issue that the party previously litigated and lost in an earlier action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979).  Federal courts apply the collateral estoppel rules of the state that rendered the prior judgment.  *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002). Accordingly, the Court applies New Jersey law.  Under New Jersey law, the party asserting collateral estoppel—Defendants here—must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding;
> (2) the issue was actually litigated in the prior proceeding;
> (3) the court in the prior proceeding issued a final judgment on the merits;
> (4) the determination of the issue was essential to the prior judgment; and
> (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*See, e.g.*, *Winters v. N. Hudson Reg'l Fire & Rescue*, 212 N.J. 67, 85, 50 A.3d 649, 659 (N.J. 2012); *Twp. of Middletown v. Simon*, 193 N.J. 228, 236, 937 A.2d 949, 954 (N.J. 2008); *see also W & D Imports, Inc. v. Lia*, 563 F. App'x 19, 22 (2d Cir. 2014) (applying New Jersey collateral estoppel law).  In New Jersey, Courts also assess the benefits that flow from the doctrine, namely, "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness."  *New Jersey Div. of Youth & Fam. Servs. v. R.D.*, 207 N.J. 88, 115, 23 A.3d 352, 368 (N.J. 2011).

A central issue in this case, central to each of Plaintiff's claims, is whether Defendants fraudulently obtained the Default Judgment they seek to enforce against Plaintiff in New York by falsely contending she had been properly served in the New Jersey Collection Action.  *See* FAC ¶¶ 6-8, 55–59, 44, 52–53, 76, 81–101, 104.  The dispositive issue of whether service was proper

at the New Jersey address meets each of the five elements necessary for a finding of collateral estoppel. First, it was the "identical issue" decided by the New Jersey Court in the July Order deciding not to vacate the Default Judgment. *Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 522, 897 A.2d 1003, 1010 (N.J. 2006) ("A party is precluded by collateral estoppel from relitigating matters or facts which the party actually litigated and which were determined in a prior action, involving a different claim or cause of action."). In its opinion, the New Jersey Court described the issue before it this way—"[b]oiled to its core, Kamal contends that the default judgment should be vacated due to deficient service." July Order at 2. The Court held that the Default Judgment was not void because "[s]ervice was effective." *See* July Order at 6. The Court reached this determination, after briefing by both parties, based on the factual record before it, which showed that initial service was not returned, service of the Default Judgment was signed for at the New Jersey address, and billing statements and two credit bureau reports showed that Annette Kamal lived at the New Jersey address where the affidavit of service attested she had been served. *Id.* at 5–10. In finding that service was proper, the Court found that "documents in the record indicate that Kamal resided in New Jersey at the address in question." *Id.* at 8.

Second, the issue of the adequacy of service was "actually litigated." In fact, Kamal had three bites at the apple—her first motion to vacate Default Judgment, her second motion to vacate Default Judgment, and her motion to reconsider the Order denying her motion to vacate the Default Judgment. Both parties were permitted to file evidence in support of their positions on the issue of service. July Order at 1, 7–8. Based on a fulsome record, the Court found that Kamal presented "no admissible proof supporting counsel's contention that she never lived in New Jersey" and no proof for the contention that she lived in New York. July Order at 7–8. According to the Collection Action docket, oral argument was held on Kamal's second motion to vacate. *See* Collection

Action. Accordingly, she had a "full and fair opportunity" to show that service was improper. *See Gannon v. American Home Prods., Inc.*, 211 N.J. 454, 474, 48 A.3d 1094, 1106 (N.J. 2012); *see also Allesandra v. Gross*, 187 N.J. Super. 96, 105, 453 A.2d 904, 908–09 (N.J. Super. Ct. App. Div. 1982) (stating an issue is "actually litigated" when "an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined").

Third, the New Jersey Court "issued a final judgment on the merits." In assessing whether a final judgment was made in a prior proceeding, a court will assess "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012); *Balik v. City of Bayonne*, No. A-1448-13T2, 2016 WL 3351942, at *2 (N.J. Super. Ct. App. Div. June 17, 2016). Here, the New Jersey Court issued an eleven-page "reasoned opinion" detailing the evidence and rationale supporting the decision that the Default Judgment was not void because service was proper. *See* July Order. New Jersey law permits finding that a Default Judgment was a "final judgment on the merits" where the defendant in the prior case had "ample opportunity" to contest it. *First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 354, 921 A.2d 417, 425 (2007). That is certainly the case here. Further, the Court later denied Kamal's motion to reconsider, reaffirming that the July Order was its final judgment on the issue. *See* Kamal Reconsideration Order. Finally, neither the Collection Action docket nor searches of the New Jersey Superior Court Appellate Division docket reflect that any order in the Collection Action was appealed. *See* Collection Action; *Free Speech Coal*, 677 F.3d at 541. Neither party to this case contends otherwise.

Fourth, the issue of whether service was effective was necessary to the New Jersey Court's determination of whether the Default Judgment was void. July Order at 5–6. The Court held that

"other than voidness due to service, relief under Rule 4:50-1 [the rule which permits New Jersey courts to vacate judgments] is precluded." *Id.* at 5.  Thus, in the Collection Action, the New Jersey Court must have determined that service was effective, as it did, to support its determination that the Default Judgment was not void. *Neal v. ASTA Funding, Inc.*, Civ. A. No. 13-3438, 2019 WL 522095, at *9 (D.N.J. Feb. 8, 2019) (finding plaintiff's employment relationship with defendant "was essential to the prior judgment, because it had to be determined in order for the arbitrator to determine whether the ITS Agreement's arbitration clause gave him jurisdiction to adjudicate claims against Neal"); *Fields v. Dickerson*, Civ. A. No. 14-778, 2016 WL 3619119, at *5 (D.N.J. July 6, 2016) ("A matter is essential when it was necessary to support the judgment rendered in the final action.").

Finally, the party against whom the preclusion doctrine is asserted here, Annette Kamal, was a party in the Collection Action.

Based on these factors and the New Jersey case law principles encouraging "finality and repose" and "avoidance of duplication," Kamal is precluded from arguing in this case that service in the Collection Action was improper. *New Jersey Div. of Youth*, 207 N.J. at 115, 23 A.3d at 368. As a result, Kamal is precluded from asserting any of her three causes of action since each is dependent on that premise.

First, Kamal is precluded from asserting her claim under RICO. To establish a violation under RICO, a plaintiff must show (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (citing *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) and citing 18 U.S.C. § 1962). A plaintiff may establish such a pattern through fraudulent activity if they specify the statements it claims were false or misleading, give particulars as how the statements were fraudulent, state when and where the statements were

made, and identify the individuals who made the statements. *Black v. Ganieva*, 619 F. Supp. 3d 309, 342 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) (citing *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) and citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) and citing Fed. R. Civ. P. 9(b)). Kamal asserts that Defendants violated RICO by forming an enterprise, making two fraudulent statements in the Collection Action, and generally engaging in fraudulent activity "as a matter of course" in other debt collection cases. FAC ¶¶ 6-8, 56–59, 44, 52–53, 81–101; Pl. Opp. at 20. The two statements Kamal alleges Defendants made in her case were affirmations to the Court that Kamal was properly served at the New Jersey address and later, that the New Jersey address was "no longer valid" when in reality (Plaintiff contends) the New Jersey address was never valid. FAC ¶¶ 56–59; Pl. Opp. at 20. Plaintiff cannot argue that these statements affirming the validity of service were false or fraudulent when she is precluded from arguing that service was in fact not proper. Further, to the extent Plaintiff seeks to litigate on behalf of others similarly situated in other purportedly fraudulent debt collection cases, Plaintiff is not competent to make the general assertions about fraudulent activity outside of her own case and, in any event, those claims of fraud are not plead with sufficient specificity pursuant to Rule 9(b).[8]

Second, Kamal is precluded from asserting her claim under New York's General Business Law. The Consumer Protection Law of New York prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349(a). To plead a cause of action under Section 349, a plaintiff must show that a defendant has engaged in (1) "consumer-oriented" conduct that is (2) "materially misleading" and

---

[8] Moreover, the Court is not convinced that Kamal could state a claim under RICO, even if permitted to argue that Defendants' statements about service in the Collection Action were fraudulent since the Second Circuit has held that "[a]llegations of frivolous, fraudulent, or baseless litigation on their own cannot constitute a RICO predicate act." *Kim*, 884 F.3d at 104.

that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 911 N.E.2d 834, 838 (N.Y. 2009) (citing *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y. 2000)). Kamal alleges that Defendants' conduct was materially misleading and deceptive when they affirmed to the New Jersey Court that they had properly served Kamal when they in fact had not. FAC ¶¶ 57–59, 104; Pl. Opp. at 22. Similar to Kamal's RICO claim, since she is precluded from arguing that service is improper, Kamal could not adequately plead "materially misleading" statements sufficient to state a GBL Section 349 claim by alleging the falsity of Defendants' statement affirming that service in the Collection Action was proper.

Finally, Kamal is precluded from asserting her claim under FDCPA for largely the same reasons. Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[.]" *Gabriele v. American Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 93 (2d Cir. 2012). Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* (citing 15 U.S.C. § 1692e). The FDCPA's venue provisions also require that consumer debt collection actions are brought "only in the judicial district or similar legal entity . . . in which [the] consumer resides at the commencement of the action." *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011) (citing 15 U.S.C. § 1692i(a)(2)(B)). Kamal asserts that Defendants violated the FDCPA under two theories: (1) Defendants filed fraudulent affidavits stating that service on Kamal was proper to obtain and enforce the Default Judgment, *see* FAC ¶¶ 57–59, 76, Pl. Opp. at 16, and (2) Defendants improperly brought the Collection Action in New Jersey when Kamal never lived there, FAC ¶¶ 55–56, Pl. Opp. at 15–16. Plaintiff's first theory here fails for the same reasons that Kamal's other claims fail—Kamal is precluded from contending that

statements affirming proper service were false, deceptive, or misleading.  The second theory presents a closer question—whether Plaintiff can assert that she lived in New York at the commencement of the action and thus the Collection Action was improperly brought in New Jersey Court.  However, here too, issue preclusion bars Plaintiff from pursuing her claims under this theory.  Implicit in and necessary to the New Jersey Court's finding that "service [on Kamal] was effective" at the New Jersey address is the finding that Kamal lived at that address at the commencement of the action. *See* July Order at 6.  In fact, the New Jersey Court expressly found—based on an evidentiary record composed of submissions by both parties—that "Kamal resided in New Jersey at the address in question." *Id.* at 8.  Accordingly, Kamal is precluded from asserting her FDCPA claim under either theory.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is GRANTED. The Court dismisses this case with prejudice.[9]  The Clerk of Court is respectfully requested to terminate docket entry 25 and close this case.

**SO ORDERED.**

Dated:  New York, NY
         March 25, 2025

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**

---

[9] The Court denies Plaintiffs' request for leave to amend the Amended Complaint. *See* Pl. Opp. at 23.  Plaintiffs were granted an opportunity to amend their complaint in response to issues raised in Defendants' initial pre-motion letter requesting leave to file a motion to dismiss based on the *res judicata* and collateral estoppel as well as the Rooker-Feldman doctrine.  [ECF Nos. 15–17].  Plaintiffs took that opportunity and did not remedy the defects as described above and previewed in Defendants' pre-motion letter.  *See* FAC.  Second, though Plaintiffs requested leave to amend in their opposition to the pending motion to dismiss, *see* Pl. Opp. at 23, they made no effort to demonstrate to the Court that the opportunity to amend would not be futile.  *See, e.g., Treiber v. Aspen Dental Mgmt.*, Inc., 635 F. App'x 1, 4 (2d Cir. 2016).